UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHAREE M.,[1] | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | )  No. 1:20-cv-03214-JMS-MG |
| | ) |
| KILOLO KIJAKAZI, *Commissioner of the Social Security Administration,* | ) |
| | ) |
| *Defendant.* | ) |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

In May 2018, Sharee M. protectively filed for supplemental security income ("SSI") from the Social Security Administration ("SSA"), alleging a disability onset date of October 30, 2015. [Filing No. 13-5 at 7-15.] Her application was denied initially on October 12, 2018, and upon reconsideration on January 3, 2019. [Filing No. 13-4 at 4-12; Filing No. 13-4 at 21-23.] On March 16, 2020, Sharee M. amended her onset date to be May 24, 2018. [Filing No. 13-5 at 44.] Also on March 16, 2020, a hearing was held before Administrative Law Judge Teresa A. Kroenecke (the "ALJ"). [Filing No. 13-2 at 52-79.] She issued a decision on April 23, 2020, concluding that Sharee M. was not entitled to benefits. [Filing No. 13-2 at 31-52.] The Appeals Council denied review on October 29, 2020. [Filing No. 13-2 at 2-9.] On December 16, 2020, Sharee M. timely filed this civil action asking the Court to review the denial of benefits, according to 42 U.S.C. § 1383(c)(3). [Filing No. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

1

# I.
## STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits . . . to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence: (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original).[2]

"If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the [Commissioner] to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). However, courts have the statutory power to affirm, reverse, or modify the SSA's decision, with or without remanding the case for further proceedings, and this power includes the ability to remand the case with instructions for the Commissioner to calculate and award benefits to the applicant. *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing 42 U.S.C. § 405(g)). "An award of benefits is appropriate, however, only if all factual issues involved in the entitlement

---

[2] The Code of Federal Regulations contains separate sections relating to disability insurance benefits ("DIB") and SSI that are identical in most respects relevant to this case. For the sake of simplicity, this Entry generally contains citations to DIB sections only.

determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Id.*

## II.
### BACKGROUND

Sharee M. was 49 years of age on her amended alleged onset date. [*See* Filing No. 13-6 at 2.] She has a high school education and previously worked as a server and a banquet captain. [Filing No. 13-2 at 59-60.]³

The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Sharee M. was not disabled. [Filing No. 13-2 at 30-51.] Specifically, the ALJ found as follows:

- At Step One, Sharee M. had not engaged in substantial gainful activity⁴ since May 24, 2018, the date she applied for benefits. [Filing No. 13-2 at 36.]

- At Step Two, Sharee M. had the following severe impairments: "bilateral knee degenerative joint disease, fibromyalgia syndrome, bilateral trochanteric hip bursitis, right shoulder degenerative joint disease, history of trigger fingers status post-surgery, bilateral carpal tunnel syndrome, and obesity." [Filing No. 13-2 at 36-38.]

- At Step Three, Sharee M. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 13-2 at 38-39.]

- After Step Three but before Step Four, Sharee M. had the RFC to perform "light work as defined in 20 CFR 416.967(b) except only occasional stooping, crouching, and climbing of ramps and stairs; no kneeling, crawling, or climbing of ladders, ropes, or scaffolds; no exposure to extreme heat, extreme cold, humidity, wetness, vibrations, or hazards, such as unprotected heights or dangerous machinery; occasional overhead reaching with the right upper extremity; and only frequent handling or gross manipulation and fingering or

---

³ The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

⁴ Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

    fine manipulation with the bilateral upper extremities.  She must be allowed to alternate into the sitting position from the standing and/or walking positions every 45-60 minutes for 2-3 minutes while at the workstation and allowed to alternate into the standing position from sitting position every 45-60 minutes for 2-3 minutes while at the workstation." [Filing No. 13-2 at 39-45.]

- At Step Four, Sharee M. was unable to perform any past relevant work.  [Filing No. 13-2 at 45-46.]

- At Step Five, considering Sharee M.'s age, education work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Sharee M. can perform, including mail clerk, office machine operator, and office helper.  [Filing No. 13-2 at 46-47.]

### III.
### DISCUSSION

Sharee M. requests that the Court reverse the denial of her claim for benefits because the ALJ erred by: (1) not providing a function-by-function assessment of the RFC with adequate explanation and identification of the medical evidence supporting the RFC determination; and (2) not abiding by the requirements of Social Security Ruling ("SSR") 16-3p in assessing Sharee M.'s testimony regarding her symptoms.  [Filing No. 15 at 17-29.]  The Court addresses each argument in turn.

    **A. Whether the ALJ Failed to Provide Adequate Explanation and Evidentiary Support for the RFC Determination**

Sharee M. argues that the ALJ failed to adequately explain the rationale behind her RFC finding.  [Filing No. 15 at 17-18.]  Specifically, she argues that the ALJ did not adequately explain "the limitation that [Sharee M.] would still be able to perform light work, [and] utilize her bilateral hands for frequent fingering and handling, and occasional overhead reaching with the right arm."  [Filing No. 15 at 18.]  She asserts that the ALJ did not consider the limitations resulting from her restricted range of motion in her right hand and arm.  [Filing No. 15 at 18.]  Sharee M. points to medical records from visits with Dr. Harsha, in which he noted that she had various issues with

5

her hands and fingers. [Filing No. 15 at 19.] She also notes that a consultative examiner found that Sharee M.'s right shoulder range of motion effectively precluded her from reaching overhead. [Filing No. 15 at 19.] She asserts that "[t]he evidence supports limiting [her] hand usage to at most occasional, which would command a favorable decision for benefits as there would be no work available." [Filing No. 15 at 18.] She argues that there is no explanation as to why the ALJ limited her to being "able to use her hands for frequent handling, fingering and feeling despite constant crippling pain, weakness, and decreased mobility in her bilateral hands." [Filing No. 15 at 20-21.] She contends that these restrictions were "pulled out of thin air with no basis in evidence and were provided only to mold the VE's response so that there would be jobs available." [Filing No. 15 at 20.] Sharee M. accuses the ALJ of cherry-picking facts, and argues that a function-by-function assessment and "the necessary reasoning behind such an assessment are missing." [Filing No. 15 at 21.] Sharee M. asserts that the RFC fails to account for evidence in the record of her "inability to use her hands for handling, fingering and feeling, to reach overhead, to stand and/or walk on a consistent basis, and her difficulties sitting in one place for any length of time." [Filing No. 15 at 23.] She argues that the hypothetical questions the ALJ asked the VE were based on the flawed RFC, so did not include all of the necessary information. [Filing No. 15 at 22.] In short, Sharee M. argues that the ALJ did not "sufficiently connect[ ] the dots between [her] impairments and the RFC finding." [Filing No. 15 at 23.]

In her response, the Commissioner argues that the ALJ acknowledged abnormal findings during some of Sharee M.'s medical exams, including "tenderness in [her] thumb and fingers, right shoulder, and knees and occasional strength deficits in the right hand and shoulder," but also considered that many of her exams "showed normal gait, full range of motion, normal sensation, reflexes, and strength, and observation that [she] was in no acute distress." [Filing No. 16 at 16.]

6

The Commissioner notes that the ALJ also considered diagnostic imaging and testing, which showed only mild abnormalities, and contends that Sharee M. "has not explained why the ALJ was required to assess all the above objective and clinical evidence any differently than she did." [Filing No. 16 at 16-17.] The Commissioner asserts that the ALJ thoroughly discussed evidence regarding Sharee M.'s "treatment and medications, and work history," and that this evidence undermined Sharee M.'s statements regarding her symptoms and limitations. [Filing No. 16 at 17.] She also notes that the ALJ considered the findings of Drs. Whitley and Ruiz and actually imposed greater limitations on Sharee M. when crafting her RFC. [Filing No. 16 at 17-19.] The Commissioner also points to "ample evidence" that the ALJ considered, showing that Sharee M. could occasionally reach overhead with her right arm. [Filing No. 16 at 19-20.] As for Sharee M.'s ability to handle and finger, the Commissioner contends that Sharee M. "does not identify any evidence the ALJ overlooked." [Filing No. 16 at 20.] Finally, the Commissioner argues that the hypothetical questions posed to the VE "matched the eventual RFC finding, which…was well supported by substantial evidence." [Filing No. 16 at 21-22.]

In her reply,[5] Sharee M. does not respond to the Commissioner's specific arguments, but generally asserts that the ALJ failed to articulate the reasoning for her decision and further argues that the Commissioner sets forth "post hoc justifications" for the ALJ's decision. [Filing No. 17 at 2.]

---

[5] The Court notes that Sharee M.'s counsel has filed the same cookie-cutter three-page reply brief in at least three other social security appeals pending before the undersigned. [See Filing No. 15 in *Ezell A. v. Saul*, Case No. 1:20-cv-01993-JMS-MG; Filing No. 12 in *Michael L. v. Saul*, Case No. 1:19-cv-04627-JMS-DML; Filing No. 15 in *Keandray B. v. Saul*, Case No. 1:19-cv-02592-JMS-DLP.] The use of a generic reply brief which does not specifically address arguments raised by the Commissioner in the response brief is not helpful to the Court or to the claimant's case. Counsel is cautioned to cease this practice.

The Seventh Circuit has held that an ALJ "must incorporate all of the claimant's limitations supported by the medical record" when making an RFC assessment. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). The RFC is based upon medical evidence as well as other evidence, such as testimony by the claimant or her friends and family. *Craft*, 539 F.3d at 676. In assessing a claimant's RFC, "the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe," and may not dismiss evidence contrary to the ALJ's determination. *Villano*, 556 F.3d at 563; *see also* 20 C.F.R. § 404.1545(a)(1) ("We will assess your [RFC] based on all relevant evidence in your case record."); SSR 96-8p at *7 ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.").

Sharee M. argues that the ALJ's decision lacked consideration for all the evidence and did not form a logical bridge in forming the RFC – specifically regarding the difficulties Sharee M. has with her right arm and hand. [Filing No. 15 at 19.] But the ALJ's decision discusses Sharee M.'s medical records, referring to her right arm and hand extensively. The ALJ stated:

> She was noted with a trigger at the right third finger plantar aspect of MCP (metacarpophalangeal joint). There was no crepitus, tenderness, warmth, or swelling of the shoulders, elbows, wrists, hands, feet, ankles, or knees…. She was able to close all fingers into fists bilaterally; button clothing utilizing both hands, and write with the dominant hand…. Her sensation was intact to light touch, her reflexes were normal, there was no evidence of muscle atrophy, and her motor strength was normal at 5/5…. At an examination on February 15, 2019, the claimant was noted with some tenderness over the volar aspect of the third MCP with mild triggering, but no crepitus in the palm, no overlying erythema, normal range of motion in flexion and extension of the third finger, and normal strength of the finger in flexion and extension…. She underwent surgical release of the right long finger trigger finger on that date…. By the time of her February 28, 2019, postsurgical follow up, she had some moderate tenderness and mild limitation in grip, but full extension without triggering…. She subsequently participated in occupational therapy for the right middle trigger finger…. On June 17, 2019, she

8

was noted with some ongoing right middle finger joint stiffness from possible arthritis, but improved grip....

[Filing No. 13-2 at 41-42.]

The ALJ further noted the inconsistency between Sharee M.'s testimony and the medical records starting from the alleged onset date. [Filing No. 13-2 at 42.] The ALJ noted that Sharee M. underwent occupational therapy for her bilateral carpal tunnel syndrome in the fall of 2019, canceled three of the ten sessions, and still "achieved her goal of demonstrating full upper extremity flexibility to allow unrestricted reaching during housekeeping and self-care tasks, and the ability to bear weight through an extended arm during cleaning/work activities." [Filing No. 13-2 at 42.]

Sharee M. claims that the ALJ ignored Dr. Harsha's opinion that she could "only use her right hand for fine manipulation 50% of the time, and her left hand for grasping, turning or twisting objects 50% of the time," that she had difficulties with triggering and stiffness of the middle finger of her right hand, that she had reduced strength and range of motion in her left hand with her thumb, that she had pain and tingling in both hands, that she had decreased grip strength, that she had difficulty with weakness and holding and dropping items, and that she was diagnosed with carpal tunnel syndrome and had numbness in her fingers. [Filing No. 15 at 19.] But the ALJ specifically addressed Dr. Harsha's opinions, explaining that they were inconsistent with Sharee M.'s other medical records which showed that Sharee M. was "in no acute distress, with comfortable appearance, full musculoskeletal range of motion, normal sensation, normal reflexes, and normal or near normal strength." [Filing No. 13-2 at 45.] The ALJ also noted Sharee M.'s medical records showing improvement with treatment and reflecting that her issues were "mild." [Filing No. 13-2 at 45.]

The Court also does not find problematic the ALJ's consideration of Sharee M.'s activities of daily living. While Sharee M. is correct that the ALJ has used language similar to the boilerplate language criticized by the Seventh Circuit, *see Bjornson v. Astrue*, 671 F.3d 640, 644-46 (7th Cir. 2012), the use of this boilerplate language does not always necessitate reversal of the ALJ's decision, *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012). "If the ALJ has otherwise explained [her] conclusion adequately, the inclusion of this language can be harmless." *Id.*; *see also Pepper v. Colvin*, 712 F.3d 351, 367-68 (7th Cir. 2013) ("[T]he simple fact that an ALJ used boilerplate language does not automatically undermine or discredit the ALJ's ultimate conclusion if [s]he otherwise points to information that justified h[er] credibility determination."). Here, the ALJ fully explained why Sharee M.'s statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely credible, pointing to medical evidence that contradicted her statements. [Filing No. 13-2 at 40-42.]

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The ALJ adequately explained the rationale behind her RFC determination by including support from the medical evidence and ultimately building a logical bridge from the evidence to her conclusion. Accordingly, the Court finds that remand based on Sharee M.'s argument that the ALJ failed to provide support for the RFC is not warranted.[6]

---

[6] Sharee M.'s argument that the ALJ did not adequately question the VE is premised on her contention that her RFC is inadequate. Because the Court finds that the ALJ sufficiently explained how she crafted Sharee M.'s RFC, it rejects Sharee M.'s argument that the ALJ's questioning of the VE based on that RFC was flawed.

B.     Whether the ALJ Failed to Abide by the Requirements of SSR 16-3p

Sharee M. argues that the ALJ provided a summary of the medical records and noted that "statements concerning the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the medical evidence and other evidence of record for the reasons explained in the decision," relying on Sharee M.'s failure to complete physical therapy. [Filing No. 15 at 24-25.] Sharee M. argues that the ALJ was required to consider her reasons for not completing physical therapy even though it provided some benefit, and that the ALJ did not do so. [Filing No. 15 at 25.] Sharee M. takes issue with the ALJ's recognition that she did not require emergency room visits for her symptoms, and contends that the ALJ incorrectly determined her level of activity based on the daily activities she performs because they require breaks, cause her pain, and she needs to take muscle relaxers to accomplish those tasks. [Filing No. 15 at 26-27.] Sharee M. argues that the ALJ cherry-picked facts and does not confront evidence that contradicts the ALJ's conclusion. [Filing No. 15 at 27.]

The Commissioner argues in response that the ALJ "sufficiently articulated and supported why she found that [Sharee M.] was limited but not disabled." [Filing No. 16 at 8-9.] The Commissioner points to the ALJ's consideration of Sharee M.'s statements and medical records, noting that Sharee M.'s medical examinations "produced some abnormal findings while also frequently showing normal gait, full range of motion, normal reflexes and sensation, and normal or near-normal strength." [Filing No. 16 at 9.] The Commissioner further points to the ALJ's consideration of "the diagnostic testing and imaging, observing that right-shoulder x-rays in 2018, bilateral knee x-rays in 2019, [and] an electromyogram of the arms in 2019 each showed only mild abnormalities, and that right-shoulder x-rays in 2019 showed no abnormalities." [Filing No. 16 at 9.] The Commissioner argues that the ALJ considered Sharee M.'s statements but did not find

them entirely reliable because of conflicting medical records. The Commissioner contends that the ALJ thoroughly considered opinion evidence that included the findings of "physicians B. Whitley, M.D., and M. Ruiz, M.D., each of whom concluded that [Sharee M.] could perform a range of light work if further limited to frequent balancing, stooping, kneeling, crouching, crawling, and overhead reaching with the right arm; occasional climbing of ladders, ropes, or scaffolds; and the need to avoid concentrated exposure to wetness and hazards." [Filing No. 16 at 10.] The Commissioner notes that the ALJ determined that Sharee M. required even more restrictions, and points this out as an example of the ALJ's consideration of both medical opinions and records. [Filing No. 16 at 10.] The Commissioner points to evidence that Sharee M.: (1) had trigger finger release surgery in February 2019 and exhibited full finger extension with no triggering and only mild grip limitation two weeks later; (2) underwent physical therapy for her right shoulder in 2018 and saw improvement in her range of motion; (3) underwent occupational therapy in 2019 with resulting improved symptoms and full upper extremity flexibility; (4) had injections in her right knee and used a brace, which significantly improved her knee issues; and (5) despite complaining of right shoulder pain at a level of 8 out of 10, never sought emergency room treatment. [Filing No. 16 at 10-11.] The Commissioner also notes that the ALJ considered Sharee M.'s activities of daily living, which indicated that she was doing a lot of walking and lifting her grandchildren, but "did not place undue emphasis on those activities or equate them with an ability to perform full-time work." [Filing No. 16 at 11-12.] The Commissioner contends that the ALJ also noted that Sharee M. had been non-compliant with physical therapy for her hip and, despite testifying that she needed a cane, was not using one at the hearing and her medical records did not reflect that she needed a cane. [Filing No. 16 at 12.]

In her reply brief, Sharee M. again does not directly address the Commissioner's arguments, but argues generally that the Commissioner uses "post hoc justifications [that] cannot make up for the ALJ's failure to articulate, explain or grapple with the evidence." [Filing No. 17 at 1.]

Pursuant to SSR 16-3p, an ALJ must first determine whether there is an underlying medical impairment that could reasonably be expected to produce an individual's symptoms, such as pain. Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at *3 (S.S.A. Oct. 25, 2017). Then, once an underlying impairment has been established, the ALJ must "evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." *Id.* at *4. In doing so, the ALJ must consider objective medical evidence, the individual's own statements, and evidence from non-medical sources, considering the following factors: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. *Id.* at *4-8.

The ALJ considered all of the factors she was required to consider under SSR 16-3p. She noted the daily activities Sharee M. is able to undertake and then considered her pain, factors that aggravate her symptoms, treatments, and other factors. Specifically, the ALJ pointed to the medical records reflecting that on February 15, 2019, the claimant underwent trigger finger release surgery that resulted in full extension without triggering. [Filing No. 13-2 at 42.] The ALJ also

cited occupational therapy notes showing joint stiffness but improved grip. [Filing No. 13-2 at 42.] The ALJ further discussed the medical evidence relating to Sharee M.'s upper extremities:

> At an evaluation on August 9, 2019, the claimant was documented with 4+ thumb and opposition strength on motor testing, 4/5 grip strength, and positive Tinel and Phalen sign bilaterally, but normal range of motion of the bilateral upper extremities…. She engaged in occupational therapy for bilateral carpal tunnel syndrome in the fall of 2019, with recommendations for visits once a week for 8 weeks…. By the time of a December 3, 2019, visit, she reported her hands to be "getting better with decreased numbness and tingling, only occurring 1 time per day."... She was discharged after 10 visits with 3 cancellations, with the claimant noting no bilateral numbness and tingling over the prior week and with negative bilateral Phalen's testing on examination…. She had achieved her goal of demonstrating full upper extremity flexibility to allow unrestricted reaching during housekeeping and self-care tasks, and the ability to bear weight through an extended arm during cleaning/work activities.

[Filing No. 13-2 at 42.]

The ALJ concluded that, based on the evidence, Sharee M.'s statements regarding the intensity and persistence of symptoms were not entirely consistent with the record. The ALJ also noted that the medical records reflect that Sharee M. acknowledged improvements in symptoms on several occasions. [Filing No. 13-2 at 43.] Further, the ALJ considered the opinion testimony of Dr. Harsha from June 13, 2018, which included his thought that "her symptoms were frequently severe enough to interfere with the concentration and attention required to perform simple work-related task." [Filing No.13-2 at 44.] The ALJ's decision also noted Dr. Harsha's updated questionnaire from February 28, 2020, in which he opined that "she was capable of a low stress job," could "sit for about 4 hours total in an 8-hour working day," could "stand/walk for 2 hours total in an 8-hour working day," and did not have "significant limitations with reaching, handling, or fingering." [Filing No. 13-2 at page 44.] The ALJ also addressed the opinion of medical consultants Dr. Whitley and Dr. Ruiz that Sharee M. "could frequently reach overhead with

the right arm, and should avoid exposure to wetness and hazards." [Filing No. 13-2 at 45.] Ultimately, the ALJ concluded that the overall medical evidence called for some additional limitations. [Filing No. 13-2 at 45.]

Sharee M. points to the ALJ's consideration of her failure to complete physical therapy, and the Court acknowledges that the ALJ does not set forth whether she considered Sharee M.'s reasons for not completing the treatment. Although an ALJ must consider the possible reasons for failing to follow through with treatment under SSR 16-3p, *see Deborah M. v. Saul*, 994 F.3d 785, 790 (7th Cir. 2021), the Court finds that any failure on the ALJ's part to do so here was harmless error. Sharee M.'s failure to complete her physical therapy was one of many factors the ALJ considered when evaluating Sharee M.'s symptoms, and the Court finds that it is not a basis for reversing the ALJ's decision. *See Kittelson v. Astrue*, 362 F. App'x 553, 558 (7th Cir. 2010) (ALJ's failure to consider reasons for claimant's lack of treatment was harmless where ALJ articulated other reasons for decision).

"An ALJ need not mention every piece of medical evidence in her opinion, but she cannot ignore a line of evidence contrary to her conclusion." *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). The ALJ adequately discussed Sharee M.'s subjective symptoms and sufficiently articulated her reasoning for discrediting certain portions of Sharee M.'s testimony as contrary to the medical evidence. Sharee M. has not pointed to specific evidence that the ALJ ignored. The Court finds that the ALJ's consideration of Sharee M.'s symptoms under SSR 16-3p was sufficient and does not warrant remand.

15

## IV.
### CONCLUSION

"The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Id.* The Court can find no legal basis presented by Sharee M. to reverse the ALJ's decision that she was not disabled during the relevant time period. Therefore, the decision below is **AFFIRMED**. Final judgment will issue accordingly.

Date: 2/24/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**